**Rice WILLS, Jr., Appellant,**

v.

**COMMONWEALTH of Kentucky, Appellee.**

Court of Appeals of Kentucky.

Nov. 23, 1973.

Roger B. Sledd, Murphy, Dunn & Sledd, Lexington, for appellant.

Ed Hancock, Atty. Gen., Kenneth A. Howe, Jr., Asst. Atty. Gen., Frankfort, for appellee.

CATINNA, Commissioner.

A jury found Rice Wills, Jr., guilty of assault and battery and fixed his punishment at a fine of $5,000 and imprisonment in the county jail for twelve months.

On October 2, 1971, Judith Stover met Rice Wills, Jr., at the apartment of Don Burger where a party was in progress. Later Judith took Wills to a liquor store to buy liquor for the party which had extended into the night. A number of the guests became intoxicated, including Judith and Wills. Later Judith decided to end the party by sending the guests home. Burger said it was his party and invited the guests to remain. Judith began to cry and went into the front bedroom. Burger followed and tried to calm her but was unsuccessful. Two other guests tried to calm her without success, and they finally gave up and left Judith alone in the room. Afterwards Wills passed Burger in the hallway stating that he was going to calm Judith.

Late that evening Ronnie Aubrey who occupied the front bedroom came in and attempted to enter his bedroom. The door was locked and when he "jiggled" the door Wills answered and said he would be out in about ten minutes. After a short time Aubrey became impatient and forced the door open with a screwdriver. In the light which shone in across the room, he saw Wills sitting on the side of the bed with his head in his hands. Wills told him to go away and he would be out in a minute or two. Aubrey closed the door and walked away. He did not see Judith in the bedroom with Wills, nor did a friend who was standing there. Aubrey testified that there was a closet at the entrance to the room which obscured all of the bed except the edge where Wills was sitting. A short time later Wills left the party in somewhat of a hurry. Approximately five minutes after Wills' departure, Judith came staggering out of the front bedroom. She was completely nude and had been brutally and seriously beaten, having sustained multiple fractures to a temple, forehead, and cheeks and contusion of her left eye to such an extent that the eye was hanging down out of the socket. She was taken to the hospital where she remained for twenty-five days and had, up to the date of this trial, submitted to plastic surgery upon two occasions.

Judith did not recollect the events of the party subsequent to her return from the liquor store. She recalled becoming aware of lying on something hard and being cold and wet and a shadowy figure sitting on the side of the bed—a big man with broad shoulders, big arms, square hands, and with slick black hair. She said she attempted to escape from the bed by grasping a curtain and was hit with something hard. She recalled nothing more until she became conscious at the hospital.

Wills presents six questions for consideration.

First, he claims that the indictment was defective because it described "fist" as a deadly weapon and, third, that the trial court, in its instructions, defined "fist" as a deadly weapon. The indictment charged Wills as follows:

"On or about the second day of October 1971, in Fayette County, Kentucky, the above named defendant maliciously and willfully struck Judith Ann Stover with his fist and other objects unknown to the Grand Jury, deadly weapons, with the intent to kill her."

■ The fact that the indictment included "fist" and "other objects" was sufficient to charge Wills with the offense denounced by KRS 435.170.

In Charles v. Commonwealth, Ky., 321 S.W.2d 253 (1959), we held that even though an indictment under KRS 435.-170(2) was insufficient to charge a felony it was sufficient to sustain a conviction on the charge of assault and battery.

The court instructed the jury upon (1) the charge of malicious striking and wounding with intent to kill, and (2) upon the lesser charge of assault and battery. The jury returned a verdict finding Wills guilty under Instruction No. 2. Wills objects to the giving of Instruction No. 1 because it was not proved that he used a deadly weapon, other than his fist which

we have held not to be a deadly weapon. Charles v. Commonwealth, supra.

■ The trial court correctly instructed the jury upon assault and battery, as it is a lesser degree of the statutory offense as set out in KRS 435.170. Hall v. Commonwealth, Ky., 276 S.W.2d 441 (1955).

■ Even though Wills contends that the instruction upon striking and wounding was not authorized by the evidence and should not have been given, he was not convicted upon that charge, and it is difficult to see in what way the instruction may have prejudiced him.

In Hensley v. Commonwealth, Ky., 474 S.W.2d 888 (1971), we said:

"An instruction, even though unauthorized, upon the highest degree of an offense is not cause for reversal of a judgment where the conviction is for a lesser offense on which the evidence warranted an instruction."

Wills' second ground for reversal claims that the trial court erred in not admitting certain medical records that impeached Judith. The records contained reported conversation between Judith and a nurse or attendant. In Sims v. United States, U.S. Court of Appeals, D.C., 248 F.2d 626 (1957), the court said:

"* * * the hospital record is not evidence of conversations; it is evidence of medical data entered in such records in the regular course of hospital business."

Upon the basis of this ruling, records of conversations with a patient were excluded from the evidence.

■ In Evans v. Commonwealth, Ky., 332 S.W.2d 847 (1960), this court held that those parts of a hospital record which expressed an opinion as to the cause of an altercation should be excluded from the evidence and that only that part of the record should be admitted which detailed the injury received by the prosecuting witness and

her condition upon entry into the hospital. The trial court, therefore, properly excluded any and all parts of the medical records sought to be introduced which recounted conversations and opinions of Judith Stover.

■ Wills' fourth claim of error is the failure of the court to direct a verdict of acquittal as no one had put him and Judith in the bedroom together, and Judith had been unable to identify her assailant. When Judith testified at the trial there was medical testimony that she was suffering from traumatic amnesia and could not recall the events that occurred in the bedroom. The evidence presented very persuasive and undenied circumstances from which a jury could validly draw the inference that Wills was in the bedroom with Judith. The question of whether he may have attacked her then became one for the jury.

■ William Allen, a detective with the Lexington Police Department, testified that he interviewed Judith two days after the incident at the party and at that time she gave him a Bank-Americard receipt with Wills' name on it. It was upon the strength of this receipt and the other evidence that the detective obtained a warrant for Wills. Although circumstantial evidence which justifies a conviction must do more than just create a suspicion, the evidence in this case was of such character that reasonable minds would be justified in concluding that Wills was guilty beyond a reasonable doubt. The sufficiency of the circumstantial evidence was for the jury. Moore v. Commonwealth, Ky., 488 S.W.2d 703 (1972).

■ Wills' final two grounds, five and six, concern an alleged failure to give the Miranda warning and a defective consent to search. There is no merit in either of these grounds. First, the statement given by Wills on the night of the incident was taken along with those given by other guests at the party. The record does not indicate that the finger of suspicion was pointing toward Wills at that time. He was doing nothing more than giving a statement as one of the guests at the party and a potential witness. We do not find that Wills was at that time entitled to a Miranda warning, for upon the occasion that he made the statements the investigation had not focused upon him, and he was no more a suspect than any other guest at the party. Wilson v. Commonwealth, Ky., 476 S.W.2d 622 (1971).

Finally, the statements made by Wills did not prejudice him. He was asked where his watch and ring were, and his answer was that he had gone home to take a shower and placed them on a shelf in the hallway. There is nothing that indicates the watch and ring were considered as crucial evidence in the case. The search of Wills' apartment was with his consent and in the presence of his wife who accompanied the officers. It failed to turn up the watch or ring or show that he had taken a shower that morning. The searching officers did not locate evidence of blood on any of the clothing or linen in the house.

■ This search produced no evidence that could have prejudiced Wills. The search was made on the morning following the party, at least two days before the finger of suspicion pointed toward Wills. The officer testified that at the time of his arrest Wills had on the watch and ring, but when asked where he found them he made no reply.

The judgment is affirmed.

All concur.